(51 Misc. Rep. 426.)

## WOLF v. MANHATTAN RY. CO.

(Supreme Court, Special Term, New York County.  September, 1906.)

1. NUISANCE—ACTION TO ABATE—INTEREST REQUIRED.

In order that an action to abate a public·nuisance may be maintained by a private person, some special damage of a substantial nature must be shown.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Nuisance, §§ 164–169.]

2. SAME—EVIDENCE.

A railroad company had acquired by release and conveyance the right to maintain an elevated road with three tracks in front of plaintiff's premises as the same was constructed and operated at the time of. the release and conveyance.  Held, in an action by plaintiff to abate an alleged public nuisance caused by an improved service whereby more trains at a greater rate of speed were maintained, no special damage was shown authorizing the action.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Nuisance, § 169.]

3. EMINENT DOMAIN—ELEVATED ROADS—ACTION FOR DAMAGES.

Plaintiff's predecessors in title, owning premises abutting on an elevated road, had recovered judgment against the railroad, and the only property· rights of plaintiff affected by the running of trains on such road were the easements of light, air, and access.  Held, that an increase in the number and speed of the trains in front of plaintiff's premises was not ground on which to base an action for injury and consequent damages to plaintiff.

Action by Pauline Wolf against the Manhattan Railway Company. Dismissed.

J. Aspinwall Hodge, for plaintiff.
C. A. Gardiner, for defendant.

GREENBAUM, J.   Plaintiff, as owner of premises situate on the westerly side of Ninth avenue, between Fiftieth and Fifty-First streets, in the city of New York, brings this suit in equity absolutely to enjoin the defendant in the operation of express trains upon the third or middle track on the elevated railway structure in front of said premises. The pertinent facts bearing upon the rights of the respective parties may be stated as follows: Plaintiff purchased her property in June, 1892.  At that time defendant's railroad in front of said property was constructed with three sets of tracks, the two outer ones being the customary north and south tracks used upon the elevated railway system, and the third an intermediate or middle track, the use of which it is here sought to enjoin.   At the time of her purchase of said premises plaintiff's predecessor in title, one Heinig, had recovered the usual abutting owner's judgment against the defendant corporation, which thereafter and thereupon acquired by purchase the easements of said Heinig and plaintiff in and over Ninth avenue in front of and appurtenant to the lot of land described in the complaint.   The instrument of conveyance and release to the defendant, which was executed on February 15, 1893, however, contained the following words of limitation with respect to the easements intended to be relinquished by the grantors, to wit:  "For the construction, maintenance and operation of an elevated railroad on said street as the same is now constructed, maintained and operated."   For many years prior to 1892, and up to the

year 1895, the middle track of defendant's structure in front of plaintiff's premises constituted part of a siding extending from Forty-Ninth street to Fifty-Third street. This was used by certain trains, which were switched upon it to permit certain other trains behind them to furnish a species of express service by continuing their run upon the westerly track under increased speed and without stopping at every station south of Fifty-Ninth street. After the passage of so-called express trains the local trains resumed their southerly course, regaining the westerly track at Forty-Ninth street. From the somewhat unsatisfactory proofs upon this point it appears that in 1893 36 express trains of the kind described passed daily in front of plaintiff's premises, and it was a matter of not uncommon occurrence to have two trains stalled upon the siding awaiting the passage of a given express train. During the year 1894 the defendant extended the middle track south to Gansevoort street for a distance of about two miles, and since 1895 it has continuously used said middle track for the running of express trains. In 1902, when this action was commenced, 72 express trains daily used the middle track. In 1892 the total number of daily trains, local and express, was 396, and in 1902, 637.

The latest utterance of the Appellate Division of this department upon the rights of the defendant to construct a middle track by an extension of the sidings for the special use of an express service is found in the recent decision in the case of Elizabeth Knoth v. Manhattan Railway Company (Sup.) 96 N. Y. Supp. 844, in which the court reaffirmed the illegality of such a construction. An absolute injunction forbidding the use of the said third track was, however, refused in that case, and plaintiff was remitted to the alternative relief of an injunction only in case defendant failed to pay the plaintiff the damages fixed by the Special Term upon a conveyance by plaintiff to defendant of the easements for the purposes of a middle track in and upon Ninth avenue in front of his premises. In the Knoth Case the plaintiff commenced his suit against the defendant eight years after it began running express trains on the middle track, and in the present case about seven years elapsed since defendant's first user for express service of the middle track, without any intimation on the part of plaintiff of any objection to such user. The attempted explanation of excuse for the delay in protesting against the defendant's use of the third track or in bringing this suit, as embodied in the testimony of plaintiff's counsel, is without the slightest probative force. This case may, however, be differentiated from the Knoth Case in that here the middle track was in existence in front of plaintiff's property when she purchased it, and when she conveyed and released her easements in and upon Ninth avenue to defendant, whereas in the Knoth Case the third or middle track was constructed during Knoth's ownership of his premises, without his consent and without any compensation to him for the deprivation of light, air, and access, of which he had been deprived by the defendant's acts. The plaintiff in the case at bar concededly is in no position to complain of the third or middle track construction in front of her premises, but only of its use for the running of express trains. To succeed in her contention it is incumbent upon plaintiff not only to show that the use of the middle track in front of her land was not

within the fair contemplation of the terms of the release and convey-
ance by her to the defendant and of the rights of the defendant under
its charter and the franchises asquired by it, but also that such user
has produced substantial special injury or damage to her. The only
testimony proffered by plaintiff bearing upon the element of special
damages was to the effect that the express trains make more noise
than the ordinary ones which stop at every station, and that the in-
creased noise interferes with conversations and business carried on in
plaintiff's building. There was no proof from which a definite or even
an approximate loss of rental or fee value of plaintiff's premises may
be deduced.    It was not attempted to be shown that the express trains on
the middle track produced greater noise than had been occasioned by
the passage of express trains on the westerly track under the former
express service.    It may therefore be inferred that the noise of passing
express trains on the westerly track, which is nearer to plaintiff's
premises than the middle track, was at least as loud as that of the pres-
ent express trains on the middle track.

The defendant, as a public carrier of passengers, by its charter and
franchises, assumed obligations to the public to transport its passengers
as comfortably and safely and with as much speed as its facilities will
permit.    I am unaware of any limitations or restrictions imposed upon
the defendant forbidding the running of its trains at the speed employed
in its express service.    Obviously, it would be the duty of defendant to
run trains as rapidly and frequently, consistent with public convenience
and safety, as the construction of its road and rolling stock would al-
low, and, in the absence of proof that the increased speed was unusual,
extraordinary, and detrimental to the public health and safety, no special
injury nor damage to an abutting owner may be predicated upon an im-
proved service, which comprehended an increase in the number and
speed of its trains.    The fee of Ninth avenue is in the city of New
York, and the plaintiff, under the. rule applied in the Story Case, 90 N.
Y. 122, 43 Am. Rep. 146, had an easement in and upon the public ave-
nue in front of her premises, which would be injuriously affected by the
exclusive occupancy of a portion of the street by the elevated railway
structure contrary to the general use for street purposes to which the
highway had originally been dedicated.    But the defendant acquired
from the plaintiff and her predecessor in title the right to maintain an
elevated railway structure with three tracks in front of her premises,
with the right to operate trains upon these tracks.    It was not stipulat-
ed at what rate of speed or to what extent the trains were to be run.
It was stipulated that the easement released and conveyed by plaintiff
to defendant was to be limited to the railroad "as the same is now con-
structed, maintained and operated," and the plaintiff contends that the
user of the middle track for express trains is outside of and not con-
templated by the terms of the release and conveyance.    The effect to be
given to the words of limitation just quoted must be determined by all
the attendant circumstances surrounding the execution of the instru-
ment.    A reference to the findings in the Heinig Case, which led to the
execution and delivery of the conveyance and release in question, shows
that "the only interests or property rights of the plaintiffs in said street

taken, appropriated, or interfered with by the defendants are the easements of light, air, and access in and over the street in front of and appurtenant to the lot of land described in the complaint herein"; that "each of said defendants was and is authorized to erect, maintain, and operate the elevated railroad mentioned in the complaint herein in Ninth avenue, in front of and abutting upon the premises described in the complaint, as the same has been erected and is now maintained and operated"; that "neither said railroad structure nor the trains running thereon have been a public or private nuisance"; that "the defendants do not make any undue or excessive noise in the operation of said railroad beyond what is necessary in the maintenance and operation of the same"; that "the structure and operation of defendant's railway have continued to be and are substantially the same at the present time as they were at the time of the actual acquisition by the plaintiffs of the title to the premises in suit." The traffic tables introduced in evidence show a considerable increase in the number of trains, both ordinary and express, from 1893 to 1902. The plaintiff has made no complaint against the increase in the number of trains. Her grievance is limited to the running of express trains on the middle track by reason of the noise made by these express trains. It has already been shown that it does not appear that the express trains on the middle track are noisier than those which had been previously operated on the westerly track, and it affirmatively appears from the findings in the Heinig Case that the operation of defendant's trains was not attended with "undue or excessive noise."

It would seem from all the foregoing considerations that a reasonable inference would flow that any annoyance to plaintiff by reason of the increase in the number and speed of the trains in front of her premises would not constitute a legitimate cause of grievance on plaintiff's part for which she may assert an injury and consequent damage based upon any wrongdoing on defendant's part. I am also of opinion that the only easements of plaintiff having been specifically found to be those of "light, air, and access," she is concluded from asserting any damage due merely to noise in the operation of defendant's trains. I am further of opinion that the words in the release, "as the same is now constructed, maintained and operated," had no reference to any such increase in the speed of trains as is shown in this case, but that they were designed not to release to defendant any unlimited use of the highway, but to restrict the easement to a railway of substantially the character of that in existence and operation at the time of the execution of the conveyance. Assuming, also, as I do, the extension of the middle track for a distance of two miles beyond the length of the original siding and the use of said extended middle track for express trains to be an unlawful and unwarranted use of the highway so as to constitute them a public nuisance, I nevertheless find that so far as the plaintiff is concerned she has failed to maintain the burden of proving that she has sustained any special damages to her property by the unlawful occupation by the defendant of the highway below her premises. To entitle plaintiff to maintain an action to abate a public nuisance, she must show that she has thereby sustained some special injury of a sub-

stantial nature.    Adler v. Metropolitan Elevated R. Co., 138 N. Y. 173, 33 N. E. 935.

Without considering any other points, I am of opinion that plaintiff has failed to establish a cause of action, and her complaint is dismissed on the merits, with costs to the defendant.    The objections to the admission in evidence of the Heinig judgment roll and the release and conveyance of plaintiff to defendant are overruled, with appropriate exceptions to plaintiff.

Ordered accordingly.